# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SPCK USA, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**PRECISION COUPLINGS, LLC,**<br><br>Defendant. | Civ. No. 18-10256 (KM) (SCM)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff SPCK USA, Inc. ("SPCK USA") brings this action against Defendant Precision Couplings, LLC ("Precision") for breach of contract, breach of the New Jersey Uniform Commercial Code, account stated, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. (DE 1). In response, Precision moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and under Fed. R. Civ. P. 12(b)(3) for improper venue. (DE 9). In the alternative, Precision moves under 28 U.S.C. §§ 1404 and 1406 and the doctrine of *forum non conveniens* to transfer venue of this action to the United States District Court for the Southern District of Texas. (DE 9-3).

For the reasons explained in this opinion, I will DENY Precision's motion to dismiss and GRANT Precision's motion to transfer.

1

## I. Background

### a. The Parties

Defendant Precision is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas. (DE 1 ¶ 6; DE 9-5 ¶ 3).[1]

Non-party SPCK Co. Ltd. ("SPCK Korea") is a manufacturer incorporated under the laws of the Republic of Korea and it mainly produces premium couplings and other products used in the Oil Country Tubular Goods ("OCTG") marketplace. (DE 12 ¶ 3). Although SPCK Korea is not a party to this dispute, the complaint often fails to distinguish between SPCK Korea and plaintiff SPCK USA. (DE 1; DE 12).

The complaint defines "SPCK" as "Plaintiff SPCK USA, INC." (DE 1, p. 1) It often refers to "SPCK" without any further identifier, implying that the entity referred to is SPCK USA. The parties' affidavits, however, reveal that the complaint sometimes incorrectly misidentifies SPCK Korea as "SPCK" (impliedly, SPCK USA). In this opinion, I will attempt to correct, or at least highlight, such discrepancies.

Plaintiff SPCK USA is a business incorporated under the laws of the State of New Jersey with its principal place of business in Fort Lee, New Jersey. (DE 1 ¶ 5). The complaint states that "SPCK . . . [is] a manufacturer and seller of commercial goods." (DE 1 ¶ 4). Precision, however, avers that SPCK USA does not manufacture couplings or any other products that were purchased by

---

[1] On a 12(b)(3) motion, the Court accepts the complaint's well-pled factual allegations as true unless they are contradicted by the defendant's affidavits. *Shah v. Centurum, Inc.*, No. CIV. 10-2015 RBK/JS, 2011 WL 1527334, at *2 (D.N.J. Apr. 20, 2011); *See Bockman v. First Am. Mktg. Corp.*, 459 Fed.Appx. 157, 158 n.1 (3d Cir. 2012). However, as our sister court has explained, the Court also considers evidence outside of the complaint because "generally, it is not necessary for the plaintiff to include allegations in his complaint showing that venue is proper." *Boston Sci. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 234–35 (D. Del. 2017) (Stark, L.) (internal citations omitted). Thus, the Court may also consider external evidence such as the affidavits submitted by the plaintiff. *See Shah*, 2011 WL 1527334, at *2–3.

2

Precision. (DE 9-5 ¶ 11).[2] In its responding affidavit, SPCK USA does not contest the assertion that SPCK USA is not the manufacturer. (DE 12). Rather, SPK USA's affidavit clarifies that SPCK *Korea* is a coupling manufacturer (DE 12 ¶ 3), and that SPK Korea started business with Precision before SPCK USA was formed. (DE 12 ¶ 4). In fact, SPCK Korea formed SPCK USA to facilitate its preexisting business relationship with Precision. (DE 12 ¶ 5). SPCK USA was formed for two reasons: (1) to facilitate the purchase of U.S. insurance coverage relating to the shipment of couplings from SPCK Korea (in South Korea) to Precision (in Houston, Texas) (DE 12 ¶ 5; DE 9-5 ¶ 17); and (2) to stand as importer of record so that Precision would avoid obligations it would incur when receiving the products in Texas. (DE 12 ¶ 5).

SPCK USA's affidavit describes SPCK USA as a trading import company, (*see, e.g.,* DE 12 ¶ 19), which has facilitated the shipments by arranging insurance, paying taxes, and receiving payments from Precision. (DE 12 ¶ 16).

### b. Business relationships and formation of SPCK USA

In 2016, SPCK Korea began doing business with Precision. (DE 12 ¶ 4). Precision asserts that its business relationship with SPCK Korea began in January 2016 when Precision began purchasing couplings through SPCK Korea's sales representative, Michael Shon. (E 9-5 ¶ 7). SPCK Korea does not address the subject of Michael Shon in its affidavit or briefs, and his name does not appear in the complaint. (DE 1; 12; 12-12).

In early 2016, Jason Hubbard and Matthew Hubbard of Precision visited Korea, where they met with Keon Chen, who is now the president of SPCK USA. (DE 12 ¶¶ 1, 5). Precision alleges that Keon Chen was and is the Chief Operating Officer of SPCK Korea, which SPCK USA does not deny. (DE 9-5 ¶ 11; DE 12). During that visit, Jason and Matthew Hubbard requested that SPCK Korea create a United States-based company for the two purposes discussed *supra*. (DE 12 ¶ 5). SPCK Korea suggested that it could provide

---

[2] Further, Precision alleges that SPCK USA is not the distributor for SPCK Korea. (DE 9-5 ¶ 11).

product liability insurance from a reputable insurer in Korea, but Precision insisted on a U.S. insurer and referred to a specific insurance company in Texas. (DE 12 ¶¶ 6, 14).[3]

Keon Chen acceded to Precision's request and established SPCK USA in New Jersey. (DE 12 ¶ 16). At no time did Precision object or take issue with respect to the location of SPCK USA. (DE 12 ¶ 7). Precision agreed to conduct business with SPCK USA going forward, knowing that SPCK USA would be a New Jersey entity. (DE 12 ¶ 8).

In the complaint, SPCK USA alleges that on several occasions from December 2016 to January 2017, engineers and representatives of Precision visited the "manufacturing site of SPCK." (DE 1 ¶ 8). In response, Precision clarifies that the visits, as the complaint does not make clear, were to "SPCK Korea's manufacturing site . . . located in *South Korea*, not New Jersey." (DE 9-5 ¶ 23, n. 2) (emphasis added). SPCK USA has not rebutted Precision's version. (DE 12).

### c. The Exclusive Distributorship Agreement

On August 1, 2017, Precision and SPCK USA entered into an Exclusive Distributorship Agreement ("EDA"). (DE 1 ¶ 9). In the EDA, Precision designated SPCK USA as the "main point of contact to remediate all non-conforming claims to include . . . (3) any other legally available remedy." (DE 12 ¶ 10). Also, under the terms of the EDA, Precision was required to order a minimum number of couplings every month, with payment due 30 days from the date on which the couplings arrived in the Houston Port. (DE 1 ¶¶ 12, 14).

Under the terms of the EDA, Precision submitted no fewer than 20 purchase orders and made wire transfers to SPCK USA's bank, the Shinhan Bank America, located in New York. (DE 12 ¶¶ 11–12). Precision asserts that it sent the purchase orders via e-mail directly to Michael Shon in South Korea. (DE 13, 6 (citing DE 13-2 ¶¶ 3–13)). In the exhibits supporting Precision's

---

[3]   Note, however, that the insurance policy does not cover the pending contractual claims for non-payment or non-conforming goods. (DE 12 ¶ 15).

affidavit, Michael Shon's responses to said purchase orders include a signature line with his position at SPCK Korea. (see, e.g., DE 13-2, 27, 35). SPCK USA has not rebutted that the purchase orders were sent, via e-mail, to Michael Shon, nor does it rebut that Michael Shon engaged in such communications from South Korea. I note, however, that the purchase orders identify the vendor as SPCK USA and lists SPCK USA's New Jersey address. (DE 12-2). It is unclear from the record whether copies of the purchase orders may have been sent to SPCK in New Jersey, *in addition* to Michael Shon in South Korea.

At a certain point, Precision placed seven purchase orders, which SPCK USA allegedly arranged to fill by shipping the goods in eight containers. (DE 1 ¶¶ 16–18). Precision allegedly received the first three containers without complaint. (DE 1 ¶17). However, on or about February 14, 2018, Precision raised a quality issue regarding the couplings received in the fourth container. (DE 1 ¶ 18). The parties agreed to quality-test a sample of 90 couplings (DE 1 ¶ 20), but Precision allegedly reneged on that agreement. (DE 1 ¶20).

Subsequently, an "SPCK" representative and inspector visited Precision's Texas offices in an effort to investigate, and possibly, resolve any problems with the couplings. (DE 1 ¶ 1). Precision avers that the visiting representative was an SPCK *Korea* representative. (DE 9-5 ¶ 34). Again, SPCK USA has not rebutted Precision's version. (DE 12).

On May 30, 2018, Precision sent a "Notice of Contract Termination" (the "termination letter") to SPCK USA alleging breach of the EDA. (DE 12 ¶ 17; DE 12-6). SPCK USA asserts that Precision sent the termination letter to SPCK USA's address in New Jersey. (*Id.*). Precision does not dispute that the termination letter was sent to the New Jersey address, but states that it was also sent to Keon Choe's e-mail address. (DE 13, 7). Thus the parties agree, at least to the extent that one copy of the letter was sent to SPCK USA.

SPCK USA's claims related to the EDA are based on the parties' disagreement over the quality of the couplings, Precision's failure to pay, and the inspection-related expenses. (DE 1 ¶¶ 9–26).

5

### d. The Consignment Agreement

On May 1, 2017, Precision and SPCK Korea entered into the Consignment Agreement. (DE 1 ¶ 27; DE 12 ¶ 26). In the complaint, SPCK USA states that Precision and "SPCK" entered into the Consignment Agreement. (DE 1 ¶ 27). SPCK USA's affidavit admits that Precision and SPCK Korea entered into the Consignment Agreement. It adds, however, that SPCK Korea later assigned its rights under the Consignment Agreement to SPCK USA. (DE 12 ¶ 29).

Precision avers that all email correspondence negotiations regarding the Consignment Agreement occurred between Texas and South Korea. (DE 9-5 ¶ 26). SPCK USA has not rebutted this factual claim. (DE 12).

In May of 2017, pursuant to the Consignment Agreement, SPCK USA shipped couplings to Precision. (DE 1 ¶ 28). Under the Consignment Agreement, Precision was then required to make attempts to sell the couplings and, for any that were sold, to pay SPCK USA the agreed rate. (DE 1 ¶ 30). Precision was required to return any unsold couplings to SPCK. (DE 1 ¶ 31).

To date, Precision has allegedly failed or refused to make payment for any couplings it sold, or to return any couplings it failed to sell. (DE 1 ¶ 33). That is the basis for SPCK USA's claims under the Consignment Agreement. (DE 1 ¶¶ 27–34).

### e. Other Agreements

Precision asks the Court to consider a Non-Disclosure Agreement ("NDA") that Precision and SPCK Korea entered into in October of 2016. The NDA designates Harris County, Houston, Texas as the proper jurisdiction for any claim of breach. (DE 9-5 ¶¶ 20, 22; DE 12 ¶ 19). SPCK USA does not dispute this. (DE 12 ¶¶ 19–20). However, SPCK USA asks the court to disregard the NDA because it is between Precision and a non-party (*i.e.*, SPK Korea), and because the claims in the complaint arise out separate agreements, not the NDA. (*Id.*). SPCK USA also points to other agreements between SPCK USA and Precision, such as a Purchase Agreement and a Mutual Confidentiality Agreement, which did not include a venue provision. (DE 12 ¶¶ 21–25).

6

## II. Procedural history

On June 6, 2018, SPCK USA filed this action against Precision in the District of New Jersey. (DE 1).

On July 12, 2018, Precision moved to dismiss. (DE 9) Precision moved, in the alternative, to transfer this action to the United States District Court for the Southern District of Texas. (DE 9-3).

For the reasons set forth in this opinion, the alternative relief is granted. I will order that this action be transferred to the United States District Court for the Southern District of Texas.

## III. Discussion

Precision moves to dismiss the complaint for lack of personal jurisdiction, or, in the alternative, improper venue or *forum non conveniens*. As an alternative form of relief, for example if the Court finds venue to be improper, Precision asks the Court to transfer the action to the Southern District of Texas under 28 U.S.C. § 1406(a). (DE 9-3, 28). In the interest of judicial economy, the district court has the discretion to consider the question of venue in advance of the question of personal jurisdiction. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). I do so here, move immediately to Precision's *forum non conveniens* argument, and order that the case be transferred under 28 U.S.C. § 1404(a).[4]

### a. Legal standard

Title 28, United States Code, Section 1404(a) provides as follows:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

---

[4] By assuming *arguendo* that this court possesses personal jurisdiction over Precision, I bypass any argument for transfer or dismissal based on improper venue under 28 U.S.C. § 1406(a). Where personal jurisdiction exists, a party will be considered a resident of New Jersey for purposes of 28 U.S.C. § 1391(b). *See* 28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.").

district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C.A. § 1404(a). Section 1404(a) is in essence a codification of the *forum non conveniens* doctrine, providing for permissive transfer of a case better heard elsewhere. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

The Third Circuit has held that permissive transfer should be guided by a number of non-exclusive public and private interest factors:

> The private interests have included: plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home; the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) (internal citations omitted).

"Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007). Thus, a court may make a discretionary Section 1404(a) determination without first establishing personal jurisdiction. *See Lafferty*, 495 F.3d at 80 (citing the holding in *United States v. Berkowitz*, 328 F.2d 358 (3d Cir. 1964) "that a § 1404(a) transfer was available even though there was no personal jurisdiction.").

8

### b. Private factors

First, I consider the private interests, beginning with the plaintiff's forum preference. Here, SPCK USA's forum preference is in New Jersey, its place of incorporation. (DE 1). Generally, "[p]laintiffs' choice of forum is a paramount consideration that should not lightly be disturbed." *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 338 (D.N.J. 2003). When the plaintiff's chosen forum is its own state, the plaintiff is "entitled to greater deference." *Piper Aircraft v. Reyno*, 454 U.S. 235, 255 (1981). That being said, "courts give substantially less weight to a plaintiff's forum choice when the dispute at the heart of a lawsuit occurred almost entirely in another state." *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 607 (D.N.J. 2010) (citing *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 321 (D.N.J.1998); *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 481–82 (D.N.J.1993)). If the plaintiff's only tie to the forum is that it is the plaintiff's state of incorporation, the court should not consider the plaintiff's preference meaningful or dispositive. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011) (applying Third Circuit law, faulting a District Court for considering a defendant's incorporation in Delaware to be dispositive of the transfer analysis).

In this case, SPCK USA's choice of forum is its home state, New Jersey, but its ties to New Jersey (and New Jersey's ties to the dispute) are nominal. Here, SPCK USA is incorporated in New Jersey, but is truly operated out of South Korea.[5] In fact, SPCK USA is so entangled with SPCK Korea that the plaintiff itself, in the complaint, cannot seem to determine where one ends and the other begins. For all that appears here, SPCK USA is an accommodation entity, with no independent reason to exist other than to facilitate the

---

[5] In its brief, SPCK USA argues that "Keon Chow [sic] served in NJ as SPCK's representative during communications with Precision in Texas." (DE 12-2, 13). (Keon Choe, the President of SPCK USA, so spells his last name in his sworn affidavit.) (DE 12). That allegation would be significant, but it is not supported by the complaint or any affidavits. Neither party submits evidence that Keon Choe was in New Jersey during SPCK USA's communications with Precision. (DE 1; DE 12).

9

relationship between a Texas company and a Korean one. For these reasons, the plaintiff's preference does not strongly weigh in its favor.

Next, I consider that the claims arose out of the parties' actions in South Korea and Texas, not in New Jersey. First, the only identified contract negotiations occurred is Texas and South Korea. Second, the couplings were ordered from Houston, Texas. While the orders were nominally made out to SPCK USA, the interaction was, in reality, between Precision in Texas and SPCK Korea, which shipped the couplings directly to Texas. Third, the couplings were received in Houston, Texas, where the alleged breaches of the agreement to either sell or return the couplings also occurred. The inspection of the couplings by representatives of SPCK USA occurred in Houston, Texas. The only meaningful actions that occurred in New Jersey were the mail delivery of the purchase orders (which seem also to have been emailed to South Korea); acceptance of the wire transfers; and the mail delivery of the termination agreement. The nature and center of gravity of the claims, then, strongly favor transfer to Texas.

Next I consider the actual locations of the parties and the dispute. It appears that a significant portion of the relevant witnesses and records will be located in either Texas or South Korea. I must observe by the way, however, that modern communications and transportation rob this factor of much of its significance.

SPCK USA asserts, without explanation, that it would be inconvenient for SPCK USA to have to appear for trial in Texas instead of New Jersey. (DE 12-12, 20). Of course, any Texas federal courthouse would be farther from SPCK USA's headquarters than any New Jersey federal courthouse. Still, no further facts or special considerations are identified. In addition, I observe that SPCK USA has not submitted evidence or even allegations that its employees are actually or regularly physically present in New Jersey; it may well be that the relevant persons would travel to court from South Korea, a circumstance that negates the inconvenience factor as between Texas and New Jersey. On the other hand, Precision's actual physical operations and personnel are

10

indisputably located in Texas, and the Southern District of Texas would therefore be more convenient for defendant. (DE 9-3).

Precision points out that a NDA with SPCK Korea specifies Texas as the forum for litigation. That being said, "[t]he presumption to enforce a forum selection clause only applies when the dispute arises from the contract containing the clause." *Circuport, Inc. v. Dlesk*, No. CIV.A. 11-00369 SRC, 2011 WL 2214654, at *2 (D.N.J. June 6, 2011). The forum selection clause in the NDA is therefore inapplicable, and the subject matter of the agreement is quite distinct, so I do not give it any legal or evidentiary weight.

### c. Public factors

Next, I consider the public factors, beginning with the local interest in deciding local controversies at home. Here, Texas has a stronger interest in the outcome of this litigation than does New Jersey. "Typically, when a substantial amount of the alleged culpable conduct occurred in one forum, that court favors retaining jurisdiction as a matter of local interest." *Czajkowski v. Peal*, No. CIV. 14-3803 RBK/AMD, 2015 WL 1914605, at *7 (D.N.J. Apr. 27, 2015) (citing *Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.*, Civ. No. 07–273, 2007 WL 4365328, at *6 (D.N.J. Dec. 11, 2007)). Also, "[t]he burden of jury duty should not be placed on citizens with a remote connection to the lawsuit." *Czajkowski*, 2015 WL 1914605 at *7. In this case, Texas has a significant interest in regulating the contractual relations and business arrangements of home-based corporations, particularly where the business consisted of the importation of goods directly to Houston and the dispute involves, *inter alia*, the quality of those goods. This District, by contrast, has a lesser interest in the subject matter, and the burden of jury duty would be placed on citizens of a State that has only an attenuated relationship to the lawsuit.

### d. Interest of justice

In addition to the public and private factors, I consider the interest of justice. "[W]here there is a bona fide dispute over the existence of *in personam* jurisdiction, the interests of justice are furthered by transfer of the action to

11

another district in which the action could have clearly been brought." *AmTrust at Lloyd's Ltd. v. Breslin*, No. CIV 14-7761, 2015 WL 1399588, *4 (D.N.J. Mar. 26, 2015) (citing *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir.1981)). *See also Societe Novelle Generale de Promotion v. Kool Stop Int'l, Inc.*, 633 F. Supp. 153, 155 (E.D.Pa.1985) ("If the lack of *in personam* jurisdiction is in doubt, sound judicial administration requires transfer to a district where it clearly could have been brought."). This Court's jurisdiction over Precision is murky, while the Texas court's jurisdiction is clear.

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir.2004). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4–4(c)). The Due Process Clause grants a court the power to exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

No persuasive claim is made that this Court would have general jurisdiction, *i.e.*, the power to "hear any and all claims" against an out-of-state defendant when its "affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). SPCK USA asserts only that Precision "may" be subject to general jurisdiction and states that discovery is needed. (DE 12-12, 11).

Alternatively, specific jurisdiction may be found where the cause of action arises out of or is related to the defendant's contacts with New Jersey. Specific jurisdiction is satisfied by a three-part test:

> First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. And third, if the prior two

requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with 'fair play and substantial justice.

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir.2007) (internal citations omitted). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984).

Here, SPCK USA asserts that Precision purposefully availed itself of the benefits of this forum by doing business with SPCK USA in New Jersey. (DE 12-12, 7). SPCK USA points to financial dealings between the parties, the mail sent to the SPCK USA New Jersey address, the fact that Precision entered into multiple contracts with SPCK USA, and Precision's knowledge that SPCK Korea was forming a United States-based corporation. (DE 12-12, 12–13).

SPCK USA cites *UniMaven, Inc. v. Texas TR, LLC*, No. CV1712008SDWLDW, 2018 WL 2244695 (D.N.J. Apr. 25, 2018), report and recommendation adopted, No. 17-12008 (SDW) (LDW), 2018 WL 2234651 (D.N.J. May 15, 2018). There, a Texas corporate defendant had solicited the plaintiff, a New Jersey corporation, to sell electronic products online through Amazon.com. 2018 WL 2244695 at *1. Plaintiff sued the defendant for breach of contract. *Id.* Magistrate Judge Vettre noted that merely entering into a contract with a resident is insufficient, but nevertheless found specific jurisdiction in light of further contacts. For example, the defendants "engaged in *numerous communications with plaintiff in New Jersey,* sent purchase orders pursuant to an agreement between the parties *which they knew plaintiff would complete in New Jersey,* and did hundreds of thousands of dollars of business with plaintiff in New Jersey in a matter of months. *Id.* at *4 (emphasis added).

There are similarities to this case, but also differences. Like the defendants in *UniMaven*, Precision knowingly entered into contracts, critically

13

the EDA, with SPCK USA.[6] In contrast to *UniMaven*, however, the purchase orders were always contemplated to be fulfilled in South Korea, not New Jersey.

It is true that physical presence in the forum is "no longer determinative in light of modern commercial business arrangements; rather, mail and wire communications can constitute purposeful contacts when sent into the forum." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 461,476 (1985)). And there were of course communications, such as the termination letter and purchase orders, to SPCK USA's New Jersey address. Still, the operative communications giving rise to the cause of action, as well as the allegedly defective shipment, relate to the Korean entity.

Generally, I find the case for personal jurisdiction over Precision doubtful. That difficulty would not arise in the Southern District of Texas, which Precision calls home. Although I do not give great weight to this factor, it does confirm my determination that a transfer of venue would be in the interest of justice.

### e. Proper venue

Here, the goods in dispute were delivered and subsequently inspected by both parties in Houston, Texas. The defendant, Precision, is also based in Houston, Texas. For those reasons, the Southern District of Texas, which includes Houston, is a proper venue, as well as a convenient one, for these claims. *See* 28 U.S.C. § 1391(b) (venue is proper in district where defendant resides, or where a substantial part of the events giving rise to the claims occurred).

### IV. Conclusion

For the reasons set forth above, I will DENY Precision's motion (DE 9) to dismiss the Complaint and will GRANT Precision's motion (DE 9, 9-3) to

---

[6] The Consignment Agreement was made with SPCK Korea, however, and its subsequent assignment of rights to SPCK USA did not forge a relevant contact between Precision and New Jersey.

14

transfer the action to the United States District Court for the Southern District of Texas.

An appropriate order follows.

Dated: January 4, 2019

**Kevin McNulty**
**United States District Judge**